```
               IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF OHIO
                          EASTERN DIVISION
```

Randall Tyler Hutchison,        :
      Plaintiff,              : Case No. 2:15-cv-3057
    v.                              : CHIEF JUDGE EDMUND A. SARGUS, JR.
Newark Police Department, et    : Magistrate Judge Kemp
al.,
      Defendants.             :

REPORT AND RECOMMENDATION

Randall Tyler Hutchison, who is currently a pretrial detainee at the Licking County, Ohio jail awaiting trial on various felony charges, filed this action under 42 U.S.C. §1983 alleging that his rights were violated by several members of the Newark, Ohio police department. The case is before the court to consider Defendants' motion to dismiss. Mr. Hutchison has filed a memorandum in opposition. For the following reasons, it will be recommended that the motion be granted in part and denied in part.

## I.   The Factual Background

Some of the claims in this case arise from an incident which took place November 5, 2014. According to the complaint, one of the events which took place that day was the shooting of a police officer. Another was Mr. Hutchison's being struck by a police car driven by police detective Doug Bline, one of the defendants. Mr. Hutchinson asserts that Detective Bline has since told several different versions of that event, all of which include the claim that Mr. Hutchison posed a threat to public safety because he was pointing a firearm at Detective Blaine or at others. However, Mr. Hutchison's complaint cites to video evidence that he did not point a firearm at the officer, and to physical evidence showing that at the time he was struck, Mr. Hutchison was on one side of a fence, perhaps on his knees, and

the gun was on the other side.  A fair inference to be drawn from Mr. Hutchison's complaint is that he had thrown his gun away and was trying to surrender when Detective Bline struck him with his vehicle.  Mr. Hutchinson also complains that evidence relating to this event (a shell casing) was lost or destroyed by the police.

A second incident is also described in the complaint, and allegedly took place about a month before the first.  According to Mr. Hutchison, on that date, two of the other defendants, Newark Police Officers Arndt and Purtee, came to his house after his girlfriend assaulted him.  They allegedly belittled Mr. Hutchison and used a racial slur during the conversation, also suggesting that he commit suicide and threatening to tell other police officers that he intended to shoot an officer.  The prayer for relief does not address this incident directly, asking that Mr. Hutchison be awarded damages, that Detective Bline be fired, and that the police department publicly apologize for running him over and putting him in a coma.

## II.  The Motion to Dismiss

In their motion to dismiss, Defendants make the following arguments:

(1) To the extent that Mr. Hutchison is suing the defendants in their official capacities, such a suit is, under Kentucky v. Graham, 473 U.S. 159 (1985), the equivalent to a suit against the City of Newark itself, but the complaint does not allege any facts which would support municipal liability here;

(2) The Newark Police Department is not a suable entity; and

(3) The individual defendants are entitled to qualified immunity on any damage claims asserted against them in their individual capacities because, even taking as true the facts set forth in the complaint, Detective Bline was justified in using deadly force to apprehend Mr. Hutchison, and the other officers did not commit any constitutional violations at all.

-2-

Mr. Hutchison's response makes two points which the Court will discuss more fully below.  He argues that the complaint alleges that he was struck by Detective Bline's vehicle while he was in the process of giving himself up, and that his reputation was damaged when Officers Arndt and Purtee circulated a false memorandum to the Newark police force to the effect that Mr. Hutchison intended to commit "suicide by cop."  The Court will address each of Defendants' arguments in turn.

### III.  Standard of Review

A motion to dismiss under Fed. R. Civ. P 12(b)(6) should not be granted if the complaint contains "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  All well-pleaded factual allegations must be taken as true and be construed most favorably toward the non-movant. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009).  Rule 8(a) admonishes the Court to look only for a "short and plain statement of the claim," however, rather than requiring the pleading of specific facts.  Erickson v. Pardus, 551 U.S. 89, 93 (2007), quoting Fed.R.Civ.P. 8(a)(2).

On the other hand, more than bare assertions of legal conclusions is required to satisfy the notice pleading standard. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988).  "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."  Id. (emphasis in original, quotes omitted).

> "[w]e are not holding the pleader to an impossibly high standard; we recognize the policies behind rule 8 and the concept of notice pleading.  A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim.  But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist."

Id. Finally, the Court notes that, even after the decisions in Twombly and Ashcroft v. Iqbal, 556 U.S. 662 (2009), *pro se* complaints are still to be construed liberally in favor of the plaintiff.  See, e.g., Denkins v. Mohr, 2014 WL 806370 (S.D. Ohio Feb. 28, 2014), adopted and affirmed 2014 WL 4272823 (S.D. Ohio Aug. 29, 2014).  It is with these standards in mind that the motion to dismiss will be decided.

IV.  Discussion

A.  Official Capacity Claims

Defendants are correct that any claims made against any of the defendants in their official capacities are deemed to be claims against their employer, which, in this case, is the City of Newark.  They are also correct that municipalities cannot be held liable simply because they employed persons who committed constitutional violations.  Rather, a municipality, in order to be held liable under 42 U.S.C. §1983, must have itself committed some act which makes clear that not just the individual employee, but the City itself, was acting in an unconstitutional manner.

There are numerous fairly well-established ways in which a municipality like a city can commit a constitutional violation. For example, it can deliberately fail to train its employees to conduct themselves properly in situations where, without adequate training, it is obvious that citizens' constitutional rights will be violated. See, e.g., City of Canton v. Harris, 489 U.S. 378, 388 (1989)(" the inadequacy of police training may serve as the basis for § 1983 liability ... where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact").  Or it can adopt a policy or custom - either through a legislative body such as a city council, or through the act of a final decision-maker - which directly causes constitutional injury.  See, e.g., Pembaur v. City of Cincinnati, 479 U.S. 469 (1986).  Alternatively, it may, after the fact,

-4-

adopt or ratify an unconstitutional action of one of its employees as its own. See, e.g., Leach v. Shelby County Sheriff, 891 F.2d 1241 (6th Cir. 1989). However, in order to withstand a motion to dismiss a claim against a municipality under §1983, the complaint must plead facts which support at least one of these theories. See Bickerstaff v. Lucarelli, 830 F.3d 388 (6th Cir. 2016).

Here, the complaint does not plead any facts suggesting that the City of Newark is responsible for any unconstitutional actions of any of the individual defendants. Mr. Hutchison has not alleged any failure to train, any City policy, or any after-the-fact ratification by the City of any of those actions. As a result, he has not stated a plausible claim against the City, meaning that his official capacity claims must be dismissed.

### B. The Newark Police Department

Mr. Hutchison has also used the Newark Police Department. His claims against that named defendant suffer from a different defect - there is no such official entity.

In Ohio, city police departments are simply part and parcel of the city itself. Thus, for example, this Court has said, with respect to cases filed against the City of Columbus Police Department, that "[t]he Division of Police is an administrative vehicle by which the city operates and performs its functions." Johari v. City of Columbus Police Department, 186 F.Supp.2d 821, 825 (S.D. Ohio 2002). And it has noted that "[t]he Sixth Circuit explained that a police department 'is not a juridical entity subject to suit under Ohio law.' Tysinger v. Police Dep't, 463 F.3d 569, 572 (6th Cir. 2006) (citing Crawford v. Zeitler, 326 F.2d 119, 121 (6th Cir. 1964), Johari v. City of Columbus Police Dep't, 186 F.Supp.2d 821, 825 (S.D. Ohio 2002), and Fenstermaker v. City of Dayton, Ohio, 712 F.Supp. 639, 644 (S.D. Ohio 1988))." Smith v. City of Columbus, 2010 WL 3258556, *15 (S.D. Ohio Aug.

17, 2010).  Consequently, the City of Newark Police Department is also entitled to be dismissed as a named defendant.

### C. <u>Detective Bline</u>

Because the bulk of Mr. Hutchison's allegations relate to Detective Bline and the events of November 5, 2014, the Court will address this individual capacity claim first.  Defendants argue that Detective Bline cannot be held liable under the facts alleged in the complaint because those facts show definitively that he was entitled to use deadly force against Mr. Hutchison. After discussing the law relating to the use of deadly force, they characterize the complaint as admitting that Mr. Hutchison "brandished a gun and that he shot and injured a police officer during the Newark police officers' pursuit ...." Memorandum in Opposition, Doc. 10, at 10.  They then assert that "[i]t is undisputed Hutchison posed an immediate risk to Officer Bline and the other officers, not to mention the risk to public safety including anyone within the vicinity of the chase." <u>Id</u>.  In their view, the complaint also states that Mr. Hutchison was resisting arrest and attempting to flee from the officers when Detective Bline struck him.  These facts, they argue, demonstrate that any use of deadly force was reasonable.

If Defendants' version of the facts were based on the only plausible reading of the complaint, their argument in favor of dismissal would be strong.  Multiple cases decided by the Supreme Court and other federal courts hold that an objective standard of reasonableness is to be applied to cases involving the use of deadly force by law enforcement officers, and that if "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others," deadly force may be used to eliminate that threat. <u>Tennessee v. Garner</u>, 471 U.S. 1, 11 (1985).  The inquiry is not based on hindsight but on what a reasonable officer would have

perceived at the time, taking into account that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  Graham v. Conner, 490 U.S. 386, 396-97 (1989).

Nevertheless, the Court of Appeals has noted that "only in rare instances may an officer seize a suspect by use of deadly force."  Whitlow v. City of Louisville, 39 Fed.Appx. 297, 302–03 (6th Cir. July 1, 2002).  Several such scenarios are described in Sample v. Bailey, 409 F.3d 689, 697 (6th Cir. 2005), all of which involve suspects who either pointed a gun at officers or approached officers with a weapon and ignored orders to put it down.  And in a situation perhaps more closely related to the facts in this case, the Supreme Court held that the use of a vehicle to terminate a suspect's flight was reasonable where the suspect "posed an actual and imminent threat to the lives of any pedestrians who might have been present, to other civilian motorists, and to the officers involved in the chase."  Scott v. Harris, 550 U.S. 372, 384 (2007); see also Godawa v. Byrd, 798 F.3d 457, 464 (6th Cir. 2015)("[w]here a suspect is attempting to flee in a vehicle, police officers are 'justified in using deadly force against a driver who objectively appears ready to drive into an officer or bystander with his car'").  The Court of Appeals has also identified various factors pertinent to this issue, including the severity of the crime involved in the case, the immediacy of the threat posed to officers or the public, the suspect's resistance to arrest, and the possibility of flight. See Dunigan v. Noble, 390 F.3d 486, 493 (6th Cir. 2004).

The problem with Defendants' argument is that Defendants have not read the complaint, as the Court is required to do, in the light most favorable to Mr. Hutchison.  As noted above, it is plausible to infer from the complaint that although there was a

-7-

chase and a shooting, by the time Detective Bline made his decision to ram his car into Mr. Hutchison, Mr. Hutchison was no longer driving his vehicle, had thrown away his gun, was not pointing a weapon at either Detective Bline or anyone else, and was attempting to give himself up. Those facts, which the Court must assume to be true for purposes of ruling on a motion to dismiss brought under Rule 12(b)(6), paint a very different picture.

As the Court of Appeals noted in Bouggess v. Mattingly, 482 F.3d 886, 890 (6th Cir. 2007), in a situation that evolves over time and involves a number of different events, "[t]he relevant time for the purposes of this inquiry is the moment immediately preceding the shooting." So, for example, in a case which, like this one, at one point involved an assault on a police officer, if the assault has ended and the suspect no longer poses a danger to the officer or others, the use of deadly force to stop the suspect's flight is not reasonable. See Foster v. Patrick, 806 F.3d 883 (6th Cir. 2015). The Court of Appeals has also said that "[a]s a matter of law, an unarmed and nondangerous suspect has a constitutional right not to be shot by police officers," Floyd v. City of Detroit, 518 F.3d 398, 407 (6th Cir. 2008), and that this right is one that has been clearly established by the case law. Id. at 409.

It is far too soon to tell what the actual facts of this case turn out to be. Perhaps all of the events described in the complaint happened in such a time frame that Detective Bline reasonably believed that Mr. Hutchison still posed a danger and was attempting to flee after having committed what is clearly a serious crime, and that incapacitating Mr. Hutchison by ramming him with a police cruiser was a reasonable way to insure the safety of the officers and others. Or, perhaps, the events unfolded just as the complaint describes them, and that by the

-8-

time Detective Bline decided to act, a reasonable officer would have known that Mr. Hutchison had thrown away his weapon, realized that the game was up, and was in the process of surrendering.  Factual issues like these cannot be resolved in the context of a motion to dismiss.

The facts alleged in the complaint are similar to those considered in Green v. Taylor, 239 Fed.Appx. 952 (6th Cir. Aug. 30, 2007).  There, a chase ensued after officers spotted the suspects driving a vehicle wanted in connection with a crime.  According to the suspects, they voluntarily ended the chase and tried to give themselves up, but were shot by officers.  The Court of Appeals noted that if " the suspects were attempting to surrender, there was no immediate threat to the officers or others," id. at 958, and held that the right not to be shot during such an attempt was clearly established, defeating any claim of qualified immunity.  Id. at 961.  That being so, Detective Bline is not, on the basis of the facts as Mr. Hutchison has alleged, entitled to a dismissal of the claims against him based on qualified immunity.

### D.  The Remaining Claims

The complaint describes two other incidents, one apparently involving the loss of some evidence (a shell casing) and one involving a confrontation between Mr. Hutchison and two of the defendants in October, 2014, which, according to Mr. Hutchinson, resulted in either an oral or written memo advising the Newark Police Department that he was intent on either shooting a police officer or having one shoot him.  The Court fails to see any connection (or even the allegation of a connection) between the missing shell casing and any claimed constitutional violation, so that matter will not be discussed further.  As Mr. Hutchison characterizes the other claim, he was the victim of false publicized information which damaged his reputation, and he

therefore has a claim under the Due Process clause, as interpreted by decisions like <u>Wisconsin v. Constantineau</u>, 400 U.S. 433 (1971).

<u>Wisconsin v. Constantineau</u> held that a citizen has a right to a hearing before certain types of false information are posted in public places by public officials.  There, government officials had posted the plaintiff's name in retail liquor outlets noting that he should not be allowed to purchase alcohol because he was, essentially, a "problem drinker."  He challenged the law which authorized such postings, contending that he was entitled to notice and an opportunity to be heard before such a public claim could be made.  The Supreme Court agreed, holding that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."  <u>Id</u>. at 437.

As can be imagined, there were efforts to turn that holding into a constitutional right not to be defamed by public officials.  Five years later, the Supreme Court made clear that it did not intend to create such an expansive right.  In <u>Paul v. Davis</u>, 424 U.S. 693 (1976), that court held that there is a difference between simple defamation, which causes an injury to one's reputation, and the deprivation of a constitutionally-protected liberty or property interest.  The Due Process clause is implicated by defamatory statements, said the Court, only if those statements cause a person's legal status to change as well – which is what happened in <u>Wisconsin v. Constantineau</u>, where, as a result of the posting, the person lost a previously-enjoyed state law right to purchase alcoholic beverages.  Consequently, unless a plaintiff who claims defamation by state officials can credibly allege that "a right or status previously recognized by state law was distinctly altered or extinguished" as a result of

-10-

the statements in question, no constitutional claim has been pleaded.  Paul, 424 U.S. at 711.

Here, Mr. Hutchison has pleaded a limited publication of false information about him (it appears the publication went no further than the members of the Newark Police Department). Although he claims in his memorandum in opposition that by writing the memo (and also by using racial slurs to him and suggesting that he kill himself), the two officers altered his legal status, he does not explain exactly what legal right he had prior to those acts which he did not also have afterward.  Such actions, if they occurred as Mr. Hutchison alleged, are not appropriate for law enforcement officers, but they do not rise to the level of a constitutional violation.  Cf. Harrison v. Prince William County Police Department, 640 F.Supp.2d 688, (E.D. Va. 2009)("Racial epithets, however, do not themselves implicate constitutional rights and cannot, on their own, form the basis of a constitutional claim").  Consequently, the Court will recommend the dismissal of these claims and these defendants.

## V.  Recommendation

For the reasons set forth above, the Court recommends that the motion to dismiss (Doc. 10) be granted in part and denied in part.  All claims against the Newark Police Department and Defendants Arndt, Purtee, and Fleming should be dismissed, but the claims against Defendant Bline should remain pending.

## VI.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

                                              /s/ Terence P. Kemp
                                              United States Magistrate Judge