# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**RANDALL TYLER HUTCHISON,**

    **Plaintiff,**

                                                    **Civil Action 2:15-cv-3057**
                                                  **Chief Judge Edmund A. Sargus, Jr.**
    **v.**                                         **Magistrate Judge Chelsey M. Vascura**

**NEWARK POLICE DEPARTMENT,** *et al.***,**

    **Defendants.**

## ORDER and REPORT AND RECOMMENDATION

Plaintiff, Randall Tyler Hutchinson, an Ohio inmate who is proceeding without the assistance of counsel, brought this civil rights action under 42 U.S.C. § 1983 against a number of Newark Police Detectives and Officers, alleging that he was subjected to excessive force in violation of the Fourth Amendment. Only Plaintiff's excessive force claim against Defendant Detective Doug Bline ("Detective Bline" or "Defendant") remains. (*See* Nov. 8, 2016 Order, ECF No. 15.) Plaintiff pleaded guilty in Ohio state court to Attempted Felonious Assault in the 3rd Degree on Bline. Citing this guilty plea, Defendant Bline moves for summary judgment (ECF No. 25) on the grounds that Plaintiff's claim is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). For the reasons set forth below, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment (ECF No. 25) be **GRANTED**. In addition, Plaintiff's Motion for Appointment of Counsel and Motion to Extend Discovery Deadlines (ECF No. 22) and Motion to Appoint Counsel (ECF No. 32) are **DENIED AS MOOT**.

**I.**

On November 5, 2014, Detective Bline, along with other officers, responded to a call to assist with surveillance. Bline had learned that the subject of the surveillance was known to carry weapons and had recently commented to other officers that he would shoot an officer who tried to apprehend him. Another detective on the scene reported on the radio that Plaintiff had exited the house and retrieved what was believed to be a gun and placed it in his pocket. Plaintiff left the scene in his vehicle and was followed by several officers. Plaintiff exited his vehicle, and Bline observed that he had "a large silver revolver in his hand." (Bline Aff. ¶ 15, ECF No. 25-2.) While another officer exited his vehicle to chase Plaintiff on foot, Bline drove north to cut off his escape route. Bline heard two gunshots and believed that Plaintiff had fired his gun at the officer on foot. Bline then pursued Plaintiff. During this pursuit, Bline saw the revolver in Plaintiff's hand and states that Plaintiff pointed it in his direction. (*Id*. at ¶¶ 18-23.) Bline turned onto Church Street, where the incident giving rise to this lawsuit occurred. Bline recounts his version of the events in his Affidavit as follows:

> I accelerated briefly, then slowed. The Plaintiff turned toward me and again raised his right arm and pointed the revolver in my direction. At that point I was certain he was going to shoot me. I immediately accelerated again toward him and struck him. The Plaintiff landed briefly on the hood of my vehicle and then fell off. I immediately stopped.
>
> I could not see the plaintiff while inside my vehicle. I exited the vehicle [with] my gun in my right hand expecting to engage the plaintiff again. I approached the rear of my vehicle, then using the rear for cover, looked around the passenger side of my vehicle. I discovered the plaintiff on the ground between the front and rear passenger side. The plaintiff did not appear to be conscious. I immediately aired my location, requested a squad to respond, and requested a supervisor come to the scene. Both arrived shortly.
>
> When I accelerated at the plaintiff he was raising his gun and had it pointed in my direction. I reasonably believed he was going to fire his weapon to either injure or kill me. I believed he had already fired his weapon at a[n] officer a few minutes earlier and I believed he would fire[] it again.

2

> The plaintiff posed a direct threat to me and my physical safety and I believed he posed a threat to the physical safety of others in the area. When I struck the plaintiff with my vehicle I did not believe I had any other reasonable choice to protect myself and the residents in the area from being harmed or killed by the plaintiff.

(*Id*. at ¶¶ 24-26.)

In his Verified Complaint, Plaintiff alleges that he had "dropped the firearm then jumped the fence then tried to surrender" and that Bline's vehicle struck him when he was "inside [the] fence." (Compl. 5, ECF No. 5.) In his Supplemental Memorandum in Opposition, Plaintiff states that he "never pointed a firearm at [D]oug [B]line." (Pl.'s Suppl. Mem. in Opp. 7, ECF No. 29-3.)

As a result of the November 5, 2015 events, Plaintiff was charged with violations of several state laws. Plaintiff entered into a plea agreement in which he pleaded guilty to five of the six counts on which he was indicted, including a plea of guilty for Felonious Assault based upon his shooting of Newark Police Officer Jarrod Conley. (Plea Agreement 2, 5, and 7-8, ECF No. 25-1.) Plaintiff also entered a plea of guilty pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), for Attempted Felonious Assault with a Firearm Specification based upon his raising of his firearm towards Bline. (*Id*. at 2, 5, and 8.) The Memorandum Documenting Nature of Plea Agreement, signed by Plaintiff, identifies the allegations supporting Plaintiff's guilty plea relating to his offense against Bline as follows:

> Count Two, ***as amended***, charges [Plaintiff] with *Attempted* Felonious Assault in violation of Sections 2903.11(A)(1) and 2623.02 of the Ohio Revised Code, a felony in the third degree. This count carries the potential maximum of three years in prison, and a fine of $10,000. This Count carries a mandatory term of three years of post-release control.
>
> In addition, this count carries a separate firearm specification. This would mandate a 3-year sentence in addition to the underlying sentence on the Felonious Assault.

3

> After being successful in shooting Ptl. Conley, [Plaintiff] fled on foot. A plain-clothes officer in an unmarked vehicle, Det. Doug Bline, was one of several officers in pursuit. As [Plaintiff] was fleeing, he was able to find his way to the area of West Church Street. By this time [Plaintiff] was aware that Det. Bline was "trailing" him. Once on Church Street, [Plaintiff] raised his firearm directly at Det. Bline in such a fashion as to manifest a substantial step toward shooting at him with the same gun he had just moments earlier used to shoot Ptl. Conley, (i.e. he knowingly attempted to cause . . . serious physical harm to Det. Bline). Det. Bline ended [Plaintiff's] attempt to shoot him by striking [Plaintiff] with the vehicle he was driving bringing [Plaintiff's] threatening behavior to an end. [Plaintiff's] gun was found at the scene.
>
> As to the firearm specification, it is further alleged that [Plaintiff] "had a firearm on or about his person or under his control while committing the offense [and that he] displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to commit the offense" (3-year).

(*Id*. at 8.) The plea agreement reflects that Plaintiff signed the agreement pertaining to all Counts, including Count 2. (*Id.* at 7 and 11.)

Plaintiff filed this action on March 1, 2016. As noted above, only his Fourth Amendment excessive force claim against Detective Bline remains. In the subject Motion for Summary Judgment (ECF No. 25), Defendant Bline asserts that *Heck v. Humphrey* bars Plaintiff's excessive force claim. Defendant alternatively posits that he is entitled to summary judgment on the merits, as well as qualified immunity.

In his Memoranda in Opposition (ECF Nos. 27 and 29-1), Plaintiff argues that factual disputes preclude summary judgment. He references a video taken from a football field, but did not attach any videos. Plaintiff states that he has "out smarted" the Newark Police Detectives because he has "been waiting for the '*Heck v. Humphrey*' argument." (ECF No. 29-3 at 7.) He submits that his *Alford* plea cannot be considered during a *Heck* analysis. Plaintiff maintains that he "would have to [have] been found guilty for Detective Bline to win this lawsuit." (*Id*.) He points out that he was not proven guilty at trial and asserts that he has "never once admitted [he

4

was] guilty" and adds that he "never pointed a firearm at [D]oug [B]line." (*Id.*) Finally, Plaintiff submits that although the state trial court denied his request pursuant to Ohio Rule of Criminal Procedure 32.1 to withdraw his plea of guilty, he expects the appellate court to grant his request because he was coerced into pleading guilty. (ECF No. 27 at 4-5; ECF No. 29-3 at 7-8.)

## II.

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation omitted). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "When a motion for summary judgment is properly made and

5

supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322–23 (1986)).

### III.

The undersigned concludes Plaintiff's § 1983 excessive force claim against Defendant Bline is barred by *Heck v. Humphrey* because success on that claim would imply the invalidity of his state-court conviction.

"If officers seize an individual 'by the use of deadly force,' they must satisfy 'the reasonableness requirement of the Fourth Amendment.'" *Presnall v. Huey*, 657 F. App'x 508, 511 (6th Cir. 2016) (quoting *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)). Thus, to prevail on his excessive force claim, Plaintiff would need to show that Defendant Bline's use of deadly force by striking Plaintiff with his vehicle was objectively unreasonable in light of the facts and circumstances. *See Chappell v. City of Cleveland*, 585 F.3d 901, 908 (6th Cir. 2009) (holding that a successful excessive force claim requires "a showing that the . . . use of deadly force was objectively unreasonable.); *see also Brousseau v. Haugen*, 543 U.S. 194, 200 (2004) (holding that "[a] car can be a deadly weapon."). Use of deadly force to apprehend a suspect is reasonable if "the officer has probable cause to believe that the suspect poses a threat of serious physical harm." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Courts routinely uphold the use of deadly force by a police officer where the facts reveal that the suspect pointed a gun at the officer. *Presnell*, 657 F. App'x at 512 ("Time and time again, we have rejected Fourth Amendment claims in this setting—when the officers used deadly force only after the suspects had aimed their guns at the officers or others." (citing several cases supporting this proposition)); *Sample v. Bailey*, 409 F.3d 689, 697 (6th Cir. 2005) (collecting cases upholding use of deadly force where

suspect pointed a gun at the officer or others).

In *Heck v. Humphrey*, the United States Supreme Court held that when assessing a claim under 42 U.S.C. § 1983, a court "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487.  If so, "the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.*

For purposes of *Heck*, an *Alford* plea is a plea of guilty that constitutes a criminal conviction.  *See United States v. McMurray*, 653 F.3d 367, 381 (6th Cir. 2011) ("For a conviction resulting from an Alford-type guilty plea, the defendant has necessarily admitted to the elements of the charge but not necessarily the underlying factual basis (internal quotation marks and citation omitted)); *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995) ("We hold today that there is no difference in the requirements of Fed.R.Crim.P. 11(f) for a defendant who pleads guilty and admits to acts constituting the crime and a defendant who pleads guilty but who either 1) affirmatively protests his innocence or 2) refuses to admit to acts constituting the crime; that is, either of the two possible Alford-type guilty pleas."); *Thomason v. Harris*, No. 3:05-CV-161-H, 2006 WL 1549003, at * 2 (W.D. Ky. June 2, 2006) (finding excessive force claim *Heck*-barred and noting that the entry of an "*Alford* plea" was a criminal conviction); *Calixte v. Briggs*, No. 3:10-cv-2838, 2011 WL 4732852, at *1-2 (N.D. Ohio Oct. 5, 2011) (finding the plaintiff's § 1983 excessive force claims *Heck*-barred where could have raised the assault as a defense and instead entered an *Alford* plea to assault under Ohio law); *Havens v. Johnson*, 783 F.3d 776, 784 (10th Cir. 2015) ("[T]he *Heck* doctrine derives from the existence of a valid conviction, not the mechanism by whicht eh conviction was obtained . . ., so it is irrelevant that [the plaintiff] entered an *Alford* plea."); *Ojegba v. Murphy*, 178 F. App'x 888, 888

7

(11th Cir. 2016) (upholding trial court's determination that excessive force claim was *Heck*-barred, noting that "[t]he fact that in this case the plea was an *Alford* plea is of no consequence"); *Payton v. Normand*, 599 F. App'x 190, 192 (5th Cir. 2015) (holding that *Heck* "applies equally to *Alford* pleas" (citation omitted)); *Green v. Chvala*, 567 F. App'x 458, 459 (7th Cir. 2014) ("Like any plea, an *Alford* plea results in a conviction to which *Heck* applies.").

The Sixth Circuit has recently explained that *Heck* operates to bar a § 1983 claim in two circumstances:

> In this Circuit, there are two circumstances under which *Heck* may apply to bar a § 1983 claim. "The first is when the criminal provision makes the lack of excessive force [or the lack of an illegal entry] an element of the crime." *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010) (citing *Heck*, 512 U.S. at 486 n. 6, 114 S.Ct. 2364). "The second is when excessive force [or illegal entry] is an affirmative defense to the crime . . . ." *Id.* (citing *Cummings v. City of Akron*, 418 F.3d 676, 684 (6th Cir. 2005), for the proposition that "an assault conviction barred an excessive-force claim because the plaintiff did not raise excessive force as a defense."). *See also Gottage v. Rood*, 533 F. App'x 546, 550 (6th Cir. 2013); *Walker v. City of Lebanon*, No. 3:12–CV–855–H, 2013 WL 6185402, at *4 (W.D. Ky. Nov. 25, 2013). In each of these circumstances, the § 1983 suit would "seek[ ] a determination of a fact that, if true, would have precluded the conviction." *Schreiber*, 596 F.3d at 334. Therefore, in this Circuit, if a plaintiff asserts a claim that contradicts an element of an underlying criminal offense, or if that claim could have been asserted in criminal court as an affirmative defense, *Heck* applies to bar the § 1983 suit.

*Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 608-09 (6th Cir. 2014).

Here, Plaintiff's § 1983 claim seeks a determination of fact that, if true, would have precluded [his] conviction for attempted assault on Defendant Bline. Specifically, his excessive force claim requires the determination that he did not point his gun at Defendant Bline such that Defendant's use of deadly force was unreasonable. *See Presnell*, 657 F. App'x at 512; *Sample*, 409 F.3d at 697. Plaintiff pleaded guilty to Attempted Felonious Assault with a Firearm Specification, *i.e.*, knowingly attempting to cause serious physical harm to another while displaying or brandishing a firearm. *See* Ohio Rev. Code §§ 2903.11, 2923.02, 2945.145; (Plea

8

Agreement 2, ECF No. 25-1.)  Yet Plaintiff maintains that he was trying to surrender, (Compl. 4, ECF No. 5); that he "did not know [Bline] was an officer," (ECF No. 29-3 at 3); and that he "never pointed a firearm at [D]oug [B]line," (*Id.* at 7).  Plaintiff has not otherwise offered a factual basis for his excessive force claim that does not imply the invalidity of his criminal conviction for Attempted Felonious Assault with a Firearm Specification.

This case is nearly identical to *Havens v. Johnson*, in which the United States Court of Appeals for the Tenth Circuit concluded that the plaintiff's excessive force claim was *Heck* barred because the plaintiff's theory of the case was inconsistent with his *Alford* plea for attempted assault.  783 F.3d at 783.  In *Havens*, the Tenth Circuit reasoned as follows:

> Havens pleaded guilty to attempted first-degree assault of Defendant Johnson. A person commits first-degree assault if "[w]ith intent to cause serious bodily injury to another person, he causes serious bodily injury to any person by means of a deadly weapon." Colo.Rev.Stat. § 18–3–202.  And a person commits attempted first-degree assault if "acting with the kind of culpability otherwise required for commission of" an assault (intent to cause serious bodily injury), "he engages in conduct constituting a substantial step toward the commission of" the assault. *Id*. § 18–2–101.  In short, Havens pleaded guilty to intentionally taking a substantial step toward causing serious bodily injury to Johnson.
>
> \*     \*     \*
>
> Havens's plea is incompatible with his § 1983 claim.  His complaint did not allege, and his opening brief does not argue, that Johnson used excessive force in response to an attempted assault by Havens.  Rather, he contends that Johnson's use of force was unreasonable because Havens did not have control of the car, he did not try to escape, he never saw Johnson, he did not drive toward Johnson, and he was hit by police vehicles and shot almost instantly after arriving on the scene.  In other words, he did nothing wrong and did not intend or attempt to injure Johnson.  This version of events could not sustain the elements of attempted first-degree assault under Colorado law and the factual basis for Havens's plea.  Havens does not present an alternative scenario consistent with his attempted-assault conviction.  Because Havens's only theory of relief is based on his innocence, and this theory is barred by *Heck*, we affirm the district court's grant of summary judgment to Johnson.

*Id*. at 783-74.  *See also DeLeon v. City of Corpus Christi*, 488 F.3d 649, 656 (5th Cir. 2007)

9

(concluding that the plaintiff's excessive force claim was *Heck*-barred where the plaintiff claimed he did "nothing wrong" and provided "no alternative pleading or theory of recovery," explaining that the plaintiff's success under his theory would deprive his conviction of a factual basis).

Finally, the undersigned finds unpersuasive Plaintiff's apparent contention that this Court should decline to apply *Heck* in light of his expectation that the state appellate court will reverse the trial court's denial of his request to withdraw his plea of guilty given his allegations that he was coerced into entering the plea. *See Hampton v. Marion*, 98 F. App'x 410, 412 (6th Cir. 2004) (holding that *Heck* barred the plaintiff from bringing his claim that federal prosecutors coerced his guilty plea); *Heck*, 512 U.S. at 486-87 ("We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.").

In sum, in this case, the factual basis for Plaintiff's excessive force claim and his conviction for Attempted Felonious Assault with a Firearm Specification are inextricably intertwined, and there is simply not "room for the facts alleged by the plaintiff and the facts essential to the judgment . . . to peacefully co-exist," *Lockett v. Suardini*, 526 F.3d 866, 873 (6th Cir. 2008). Because Plaintiff cannot succeed on his excessive force claim without implying the invalidity of his state-court conviction for Attempted Felonious Assault with a Firearm Specification, it is **RECOMMENDED** that the Court find the claim to be *Heck*-barred and **GRANT** Defendant's Motion for Summary Judgment.

**IV.**

For the reasons set forth above, it is **RECOMMENDED** that the Court **GRANT** Defendant's Motion for Summary Judgment on the grounds that Plaintiff's sole remaining claim is *Heck*-barred.  (ECF No. 25.)  In addition, Plaintiff's Motion for Appointment of Counsel and Motion to Extend Discovery Deadlines (ECF No. 22) and Motion to Appoint Counsel (ECF No. 32) are **DENIED AS MOOT**.

**PROCEDURE ON OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED**.

      /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE